

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AEYIOU P. KAZOLIAS, KEVIN H. ROXBY, and
ROBERT C. SWINGLE,

                                   Plaintiffs,

         v.

IBEW LU 363, JOHN MARAIA, as Business Manager
of LU 363, LIGHTMORE ELECTRIC, and ANDREW
H. POPIK as President of Lightmore Electric,

                                   Defendants.

---

09 Civ. 7222 (RO)

MEMORANDUM & ORDER

RICHARD OWEN, United States District Judge:

   Plaintiffs Aeyiou P. Kazolias, Kevin H. Roxby, and Robert C. Swingle bring this action

against Defendants International Brotherhood of Electrical Workers Local Union 363 ("the

Union"or "IBEW"), John Maraia ("Maraia"), Lightmore Electric, and Andrew Popik[1]

(collectively "Defendants") alleging that the Union, among other things, violated its duty of fair

representation ("DFR"), retaliated against Plaintiff in violation of Title I of the Labor-

Management Report and Disclosure Act ("LMRDA"), violated § 301 of the Labor Management

Relations Act ("LMRA") by breaching the IBEW International Constitution, and discriminated

against Plaintiffs in violation of the Age Discrimination in Employment Act (the "ADEA") and

New York Executive Law §§ 290-297.

   Defendants now move for summary judgment.  Magistrate Judge Lisa Margaret Smith

issued a Report and Recommendation in which she recommended that Defendants' motion be

granted in part and denied in part.  As discussed below, this Court concurs with the Report and

---

[1] Lightmore Electric and Andrew Popik were dismissed as parties to this action by joint stipulation on October 20, 2011. [*see* dkt. no. 64.]

Recommendation and adopts it as the Order of this Court, with the exception of several of Plaintiff Kazolias' LMRA breach of contract claims, two of Plaintiff Roxby's LMRA claims, and Plaintiffs Kazolias' LMRDA claims for which Defendants have shown they are entitled to summary judgment. Accordingly, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## BACKGROUND

### A. **Factual History**

The relevant facts are provided in the Report and will not be repeated here in full. Plaintiffs are journeymen electricians and members of the Local 363 Union, a labor organization that negotiates and establishes collective bargaining agreements with various employers in the Union's geographic area.

Pursuant to rules for job referrals contained in the collective bargaining agreement ("CBA") and additional rules, the Union refers electricians to jobs with employers who are parties to the CBA. Electricians are referred to positions according to a list, ranked by group according to experience and other factors, and by the duration of unemployment. The CBA requires the Union to refer electricians to employers according to the list and generally refers them in chronological order, subject to several exceptions contained in the CBA, including for positions requiring specific skills or specialties. The instant dispute began in December, 2007, when the Union referred Plaintiffs to jobs with Lightmore Electric. Plaintiffs were laid off by Lightmore in late January, 2008, and thereafter filed several grievances against Lightmore. The Union investigated the grievances to determine which claims had merit, and after doing so, reached a resolution with Lightmore on some of the grievances.

Plaintiffs were unsatisfied with the resolution of the grievances, and thereafter Plaintiff Roxby filed unfair labor practices charges against the Union and Lightmore with the National Labor Relations Board ("NLRB.")  Plaintiff Roxby thereafter filed complaints against the Union and Lightmore, charging that the Union failed to process the grievances regarding alleged unsafe working conditions at Lightmore, had threatened Plaintiffs with Union discipline for complaining about these allegedly unsafe working conditions, and that the Union failed to refer Plaintiffs to positions for arbitrary reasons including their unsafe working condition complaints. These charges were dismissed.  Plaintiffs Roxby and Kazolias then filed age discrimination and retaliation charges against the Union and Lightmore with the Equal Employment Opportunity Commission ("EEOC") in September, 2008.  Plaintiff Swingle filed an EEOC charge against the Union and Lightmore on May 1, 2009 and a second EEOC charge on May 9, 2009.  Plaintiff Roxby filed a second EEOC charge against the Union on May 6, 2009, alleging that the Union improperly retaliated against him after he filed the first EEOC charge.

Plaintiff Kazolias became Union President in July, 2009.  A series of disputes between Kazolias and Maraia occurred during Kazolias' tenure as president, which are described in the Report.

### A. Procedural History

Plaintiffs filed the complaint on August 17, 2009. [dkt. no. 1.]  Defendants moved for summary judgment on January 13, 2012.  [dkt. nos. 74-77]  Plaintiffs opposed Defendants' motion on March 31, 2012 [dkt. nos. 80-83], and Defendants filed a reply on April 18, 2012. [dkt. nos. 85-87.]

On December 11, 2012, Magistrate Judge Lisa Margaret Smith issued a Report and Recommendation (the "Report") in which she recommended that Defendants' summary

judgment motion be granted in part and denied in part. [dkt. no. 98.]  Specifically, the Report recommended that the following claims survive dismissal: Plaintiff Kazolias' claims that Defendant Union breached its duty of fair representation related to two of the 27 challenged job referrals, the November 18, 2009 and March 2, 2010 referrals; Kazolias' LMRDA claims arising out of these two challenged referrals; Kazolias' breach of contract claims under Section 301 of the LMRA based on these two referrals, and the challenged referrals of the following dates: October 21, 2008, October 28, 2008, November 12, 2008, November 13-24, 2008, and December 1-3, 2008; and Kazolias' retaliation claims under the ADEA arising out of the challenged job referrals on November 18, 2009 and March 2, 2010 as against the Union.  The Report recommended that Plaintiff Swingle's LMRA breach of contract claims based on the challenged referrals on the following dates survive:  February 29, 2008; March 10-11, 2008; March 20-31, 2008; and August 20-26, 2008.  The Report recommended that Plaintiff Roxby's LMRA breach of contract claims based on the challenged referrals on the following dates survive:  February 29, 2008; March 11, 2008; August 4-5, 2008; and August 14, 2008.

The Report recommended that summary judgment be granted in favor of Defendants on all of Plaintiffs' other claims.  The Report also recommended that Plaintiffs' motions to file a second amended complaint and to re-open discovery for the purposes of allowing them to depose non-party Rosario Olivieri be denied without prejudice.  After being granted an extension of time to file objections to the Report upon request by Plaintiffs with consent of Defendants [see dkt. no. 99], Plaintiffs and Defendants each filed objections to the Report on February 15, 2013. [dkt. nos. 100-05.]  On March 8, 2013, both Plaintiffs and Defendants filed oppositions to the other party's objections to the Report. [dkt. nos. 108, 111.]

## DISCUSSION

## A. Summary Judgment Standard

The court may grant summary judgment only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Feingold v. New York,* 366 F.3d 138, 148 (2d Cir. 2004).  The role of the court on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir. 1986); *see, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Howley v. Town of Stratford,* 217 F.3d 141, 150–51 (2d Cir. 2000).

The party moving for summary judgment bears the initial burden of informing the court of the basis for his motion and identifying those portions of the "pleadings, the discovery and disclosure materials on file, and any affidavits" that demonstrate the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c); *see, e.g., Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Koch v. Town of Brattleboro,* 287 F.3d 162, 165 (2d Cir. 2002). In making this judgment, the court must view the record in the light most favorable to the non-moving party. *See, e.g., Hunter v. Bryant,* 502 U.S. 224, 233, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 61 (2d Cir. 2002). If the non-moving party has the burden of proof on a specific issue, the movant may satisfy his own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. *See, e.g., Celotex,* 477 U.S. at 322–23, 325, 106 S.Ct. 2548; *PepsiCo, Inc. v. Coca–Cola Co.,* 315 F.3d 101, 105 (2d Cir. 2002); *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir. 1995). If the movant

fails to meet his initial burden, however, the motion will fail even if the opponent does not

submit any evidentiary materials to establish a genuine factual issue for trial. *See, e.g., Adickes v.*

*S.H. Kress & Co.,* 398 U.S. 144, 161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Giannullo v. City of*

*New York,* 322 F.3d 139, 140–41 (2d Cir. 2003).

     If the moving party carries his initial burden, the opposing party must then shoulder the

burden of demonstrating a genuine issue of material fact. *See, e.g., Beard v. Banks,* 548 U.S. 521,

529, 126 S.Ct. 2572 (2006); *Celotex,* 477 U.S. at 322; *Santos v. Murdock,* 243 F.3d 681, 683 (2d

Cir. 2001). In doing so, the opposing party cannot "rely merely on allegations or denials" of the

factual assertions of the movant, Fed.R.Civ.P. 56(e)(2); *see, e.g., Amaker v. Foley,* 274 F.3d 677,

680–81 (2d Cir.2001), nor can he rely on his pleadings or on merely conclusory factual

allegations. *See, e.g., Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000). He must also

"do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348; *see also*

*Woodman v. WWOR–TV, Inc.,* 411 F.3d 69, 75 (2d Cir. 2005). Rather, he must present specific

evidence in support of his contention that there is a genuine dispute as to the material facts. *See,*

*e.g., Celotex,* 477 U.S. at 324; *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998); *Rexnord*

*Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994).

     To demonstrate a "genuine dispute," the opposing party must come forward with

sufficient evidence to permit a reasonable jury to return a verdict in his favor. *See, e.g.,*

*Anderson,* 477 U.S. at 242, 248, 106 S.Ct. 2505; *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348;

*Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 101 (2d Cir. 2001). If "the party

opposing summary judgment propounds a reasonable conflicting interpretation of a material

disputed fact," summary judgment must be denied. *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4,

9–10 (2d Cir. 1983); *see also Rogath v. Siebenmann*, 129 F.3d 261, 267 (2d Cir.1997).

**B.** **Standard of Review**

United States Magistrate Judges hear dispositive motions and make proposed findings of fact and recommendations, generally in the form of a Report and Recommendation.  In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

A party may file "specific written objections," Fed R. Civ. P. 72(b), to a Magistrate Judge's proposed findings and recommendations, and in that case, the district court has an obligation to make a *de novo* determination as to those portions of the Report and Recommendation to which objections were made. 28 U.S.C. § 636(b)(1).  A district court judge, in making such determination, has discretion in the weight placed on proposed findings and recommendations and may afford a degree of deference to the Report and Recommendation. *See United States v. Raddatz,* 447 U.S. 667, 676 (1980).  Objections to a Report and Recommendation are to be "specific and are to address only those portions of the proposed findings to which the party objects." *Camardo v. General Motors Hourly-Rate Employees Pension Plan*, 806 F. Supp. 380, 381-82 (W.D.N.Y. 1992).  Objections that are "merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke *de novo* review." *See Vega v. Artuz*, 2002 WL 31174466, at *1, 2002 U.S. Dist. LEXIS 18270 (S.D.N.Y. 2002).

Where no timely objection has been made by either party, a district court need only find that "there is no clear error on the face of the record" in order to accept the Report and Recommendation. *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985).  In the event a

party's objections are conclusory or general, or simply reiterate original arguments, the district court also reviews the Report and Recommendation for clear error.

Defendants object to the Report and Recommendation on the following grounds:  the Report was improper in finding that Plaintiffs were not required to exhaust their administrative remedies by bringing their complaints before the Appeals Committee established by the CBA; the Report erred in finding that Plaintiffs' NLRB complaints before the NLRB and EEOC, the federal action, and comments made by Plaintiff Kazolias were free speech for purposes of LMRDA Title I; and that the Report improperly concluded that some of Plaintiffs' challenged job referral claims survived dismissal.

Plaintiffs generally object to the Report and Recommendation on the bases that the Report applied an incorrect standard related to Defendant Union's duty of fair representation, incorrectly applied summary judgment standards in dismissing many of Plaintiffs' claims, and improperly dismissed many of Plaintiffs' claims under the LMRDA, the LMRA, and the ADEA.

### C. **Plaintiffs' Duty of Fair Representation Claims**

A union has a duty to fairly represent all employees subject to the CBA, which includes negotiating and administering the collective bargaining agreement and "fair and prompt consideration and, if dictated by controlling legal standards, processing on behalf of employees of their claims under contract dispute resolution procedures." *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1153 (2d Cir. 1994); *Musto v. Transport Workers Union of Am.*, 818 F.Supp.2d 621, 634 (E.D.N.Y. 2011).  A plaintiff alleging that a union has breached its duty of fair representation must demonstrate that the union's actions were "arbitrary, discriminatory, or in bad faith." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991). Actions taken by a union are "arbitrary only if, in the light of the factual and legal landscape at

the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational.*" *O'Neill*, 499 U.S. at 67; *Musto*, 818 F.Supp.2d at 634 (a union's conduct is only arbitrary "when it is without a rational basis of explanation.") The plaintiff must also demonstrate a casual connection between the union's conduct and any injuries suffered by plaintiff. *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998).

A court's review of a union's representation is deferential, "recognizing the wide latitude" that unions require in order to effectively execute their responsibilities. *O'Neill*, 499 U.S. at 78. Reviewing courts recognize that this range of reasonableness "gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong" or negligent. *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44-46 (1998); *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73 (1990).

The Report applied the six-month statute of limitations that courts in this circuit apply to duty of representation claims, finding that Plaintiffs' claims generally accrued on the date they occurred and therefore that any claims arising earlier than six months prior to February 17, 2009 are time-barred. The Report also declined to consider any claims arising after August 25, 2010, the date of the Amended Complaint was filed, because any such claims were raised for the first time on summary judgment. The Report also rejected Plaintiffs' attempts to avoid the statute of limitations by arguing that the challenged job referrals constituted a continuing violation that tolled the limitations period and that the time-barred claims can place timely claims into context. In any event, the Report found that even if the continuing violation theory did apply, it would not affect the conclusion because Plaintiffs' claims consist of "discrete but repeated violations of the duty of fair representation since the initial mis-handling of their grievances" which does not constitute a continuing violation for purposes of tolling the statute of limitations. (*See* Report at

21.)

As such, the Report found that only two of Plaintiffs' DFR claims survived dismissal –
Kazolias' challenged referrals of November 18, 2009 and March 2, 2010 – because Kazolias had
shown evidence of retaliatory animus and because contradictory evidence as to Defendants'
legitimate, non-retaliatory reasons for the challenged referrals precluded summary judgment.
Plaintiffs object to the dismissal of the majority of their DFR claims on the basis that the Report
applied an improper standard of conduct in reviewing the Union's actions and that substantively
Plaintiff's claims are supported by the evidence.

First, Plaintiffs challenge the February 17, 2009 to August 25, 2010 time frame, arguing
that "the union's animus, and threats that [Plaintiffs] would not work in the jurisdiction again,
and repeated failures . . . to refer [Plaintiffs] to jobs constitute a continuing violation, tolling the
limitations period." (Pl. Obj. at 16.)[2]  Plaintiffs argue that earlier time periods allegedly "shed
light" on alleged patterns of Union conduct related to job referrals that are not time-barred. (*See*
Pl. Mem. at 17) ("a jury could be instructed to consider the evidence of similar violations, even
in an earlier time-barred period, if it could reasonably shed light on the extent of the violations
and the animus involved.")  These objections are vague and generally repeat the arguments
Plaintiffs made in opposition to summary judgment and provide no reason for this Court to upset
the Report's finding that these claims are time-barred.

Plaintiffs further claim that the Report applied an improper standard in reviewing the
Union's actions under an impermissibly deferential standard rather than assessing the actions
under a heightened duty of care standard, arguing that "[a]ll the claims should be triable, based
on the union defendants' animus" and that the Report improperly "applied the deferential DFR

---

[2] "Pl. Obj." refers to "Plaintiffs' Objections, with Supporting Facts to the Magistrate Judge's Report and
Recommendation Granting Defendants' Motion for Summary Judgment in Substantial Part," dated February 15,
2013."

standard to DFR referral claims, when [it] should have applied the heightened care standard."
(Pl. Obj. at 10.) Plaintiffs argue that the Report "failed to consider or apply . . . the union's
exclusive and heightened duty to their members and plaintiffs, in administering the referral
provisions of the CBA" and that the unions "have a heightened duty of fair dealing toward all
employees in view of the added responsibility that unions have." (Pl. Obj. at 21.). These
objections, again, are generally vague and repeat arguments previously made, and fail to support
their claim that the standard applied was improper, nor do they show how a different standard
would have resulted in their DFR claims surviving. Plaintiffs cite to case law from the Courts of
Appeals for the District of Columbia Circuit and the Ninth Circuit, which does not have binding
precedential value on district courts in this circuit.

This Court finds that the standard the Report applied to the Union's conduct and the
manner in which it was applied was thorough and adequately supported. There is no merit to
Plaintiffs' claim that the Report erroneously reviewed their claims under an improper standard
and no reason to upset the Report's findings in that regard.

**D. Plaintiffs' LMRDA Claims**

Plaintiffs allege that Defendants violated their rights under the LMRDA in reprisal for
them filing complaints with the NLRB and the EEOC and for filing this civil action, that
Defendants improperly disciplined Plaintiff Roxby in violation of LMRDA section 609, and that
Plaintiff Kazolias was improperly removed as benefits fund trustee in violation of the LMRDA's
anti-retaliation provisions. The Report recommends that Plaintiff Kazolias' LMRDA claims
arising out of the November 18, 2009 and March 2, 2010 referrals survive summary judgment
but that the remainder of Plaintiffs' LMRDA claims be dismissed. Defendants argue that the
Report was improper in not dismissing all of Plaintiffs' referral-related LMRDA claims for

Plaintiffs' failure to exhaust administrative remedies before filing this action. Defendants also argue that the Report incorrectly concluded that Plaintiffs' complaints constituted free speech for the purposes of Title I of the LMRDA.

As explained in the Report, Article 4, Section 15 of the CBA establishes a process by which aggrieved parties who file complaints for, among other things, referral-related concerns, may potentially be granted relief. The Appeals Committee reviewing such complaints is comprised of one member appointed by the Union, one member appointed by management, and a third member appointed by the two representatives. Section 4.16 of Article IV of the CBA states that "[i]t shall be the function of the Appeals Committee to consider any complaint of any employee" and the committee "shall have the power to make a final and binding decision on any such complaint which shall be complied with [by] the local Union."

The Report found that Plaintiffs should not be required to exhaust job referral-related claims under the LMRDA because the Union did establish that the committee has the power to provide relief in a form that will sufficiently compensate Plaintiffs for lost work when an individual is improperly skipped-over on a job referral. (*See* Report at 33-34.) As such, the Report found that the Union had not met its burden of showing that its internal remedies are adequate to compensate wronged individuals.

Defendants object to the this finding, claiming that the "core purpose [of the Appeals Committee] is resolving issues of unfair treatment at the hiring hall" and that the committee has "the power to make a final and binding decision on any such complaint which shall be complied with by the local Union." (Def. Obj. at 13.)[3] Defendants further argue that the committee's authority "obviously includes" the power to remedy individuals for lost work related to job

---

[3] "Def. Obj." refers to the "Objections to Report and Recommendation on behalf of Defendants IBEW Local Union 363 and John Maraia, as business manager of IBEW Local Union No. 363," dated February 15, 2013.

referrals and that the committee's authority to issue "final and binding" decisions which must be followed by the Union indicates that is has the power to award appropriate compensatory remedies (*Id.*)

Defendants, however, fail to cite any provision of the CBA or indicate that the process could sufficiently compensated aggrieved parties. This Court therefore concurs with the Report's finding that Plaintiffs were not required to exhaust their administrative remedies in this regard.

Defendants also claim Plaintiffs' conduct was not "free speech" under the LMRDA. A plaintiff asserting a retaliation claim under the LMRDA must show that he or she was disciplined for engaging in some form of activity protected under the act. The plaintiff must show (1) the conduct constituted "free speech" under the LMRDA, (2) the union took action against the plaintiff because of the speech, and (3) damages. *Green v. Brigham,* 2005 WL 280327, at *9 (E.D.N.Y. 2005).

The LMRDA protects a union member's freedom of speech and assembly and guards against improper disciplinary action. Section 101(a)(2), the "Bill of Rights of Members of Labor Organizations" entitled "Freedom of Speech and Assembly," provides the following:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
> 29 U.S.C. § 411(a)(2).

In enacting Title I, Congress intended to "protect union members from oppressive

union leadership while preserving the union's right to adopt reasonable rules of governance. *Messina v. Local 1199, SEIU*, 205 F.Supp.2d 111, 118 (S.D.N.Y. 2002). Title I seeks to "further the basic objection of the LMRDA: 'ensuring that unions [are] democratically governed and responsive to the will of their membership.'" *Helmer v. Briody*, 759 F.Supp. 170, 176 (S.D.N.Y. 1991).

The complaints filed by Plaintiffs, for which they allege Defendants retaliated against them, are not the type of speech the LMRDA protects because Title I is "designed to protect speech in the context of the union democratic process, i.e. political speech primarily addressed to other union members, rather than free speech at large." *Helmer*, 759 F.Supp. at 176. Plaintiffs have not demonstrated that their NLRB and EEOC complaints, or this civil action, have anything to do with the democratic governing of the union, nor have Plaintiffs alleged or demonstrated that their complaints or the content therein were in any way communicated to union members. *See id.* (Plaintiff did not claim that "he ever voiced his beliefs in the corruption of the Local's leaders to his fellow members."); *see also Monaco v. Smith*, 2004 WL 203009, at *9 (S.D.N.Y. 2004) (statements made by Plaintiff directly to his supervisor were not political speech related to the "democratic integrity of the union" and are therefore not protected by the LMRDA.)

Accordingly, Plaintiffs' filing of complaints before the NLRB and EEOC, and this civil action, is not free speech protected by the LMRDA. Defendants are therefore entitled to summary judgment on Plaintiffs' LMRDA claims related to Plaintiffs' filing of these complaints. In addition, this Court concurs with the Report's finding that Defendants are entitled to summary judgment on Plaintiff Roxby's LMRDA § 609 claim and Plaintiff Kazolias' claim related to comments he made during his tenure as President that were critical of union referral

procedures.

Defendants are therefore entitled to summary judgment on Plaintiffs' LMRDA claims.

### E.   **Plaintiffs' LMRA Claims – Breach of Contract**

LMRA § 301(a) provides federal subject matter jurisdiction for actions "for violations of contracts between an employer and a labor organization . . . or between any such labor organizations." 29 U.S.C. § 185(a).

As stated above, the Report found that some of Plaintiff's challenged referrals survived. Unlike other of Plaintiff's claims, Plaintiffs' LMRA breach of contract claims do not require a showing that Defendants' breaches were motivated by retaliatory intent. In addition, as explained above, the Report did not require Plaintiffs to exhaust administrative remedies because there was no indication that the union has the ability to provide compensatory damages.

The Report recommends that summary judgment be denied on Kazolias' LMRA breach of contract claims based on his denial of job referrals on November 18, 2009 and March 2, 2010. The Report also found that summary judgment should be denied based on the challenged referrals of October 21, 2008, October 28, 2008, November 12, 2008, November 13-24, 2008 and December 1-3, 2008 because there were genuine issues of material fact as to whether the union's established referral procedures were followed when these referrals were made. Defendants claim that Kazolias was not referred to the October 21, 28, November 12, December 1, and December 2, 2008 positions because he did not possess a current Arc Flash certification and was therefore not qualified for those referrals. Defendants state that Kazolias became certified in Arc Flash in January, 2009 and declare that Kazolias was not certified in Arc Flash within the Union prior to taking this certification course. (Corcoran Aff. ¶ 5.)[4] Defendants

---

[4] "Corcoran Aff." refers to the Affidavit of Nicole Corcoran in Support of Defendants' Objections to the Report and Recommendation, dated February 13, 2013.

attach to the Olivieri Affidavit a certificate dated January 17, 2009 purporting to show that Kazolias in fact became certified in Arc Flash on this date. (Corcoran Decl, Ex. 1.)[5] As such, Defendants have not overcome the contradictory evidence as to whether or not Kazolias was not qualified for the positions for which he was not referred on October 21, 28, November 12, December 1, and December 2, 2008. Defendants are therefore entitled to summary judgment on these claims.

With regard to Kazolias' claim that he was repeatedly passed over for referrals from November 13-24, 2008, Defendants originally asserted that Kazolias was out of the area working for Local 246. Because Plaintiff stated he was not in that geographic area at that time and had in fact never worked in Local 246, the Report denied summary judgment on these referrals. Defendants object on the basis that its documents erroneously indicated Local 246, rather than Local 479. (*See* Olivieri Aff. ¶¶ 14-15.) Defendants' objections, however, fail to demonstrate that Defendants are entitled to summary judgment on these referrals. Defendants do not provide evidence showing that Kazolias was working out of the area during the time period covered by the November 13-24 challenged referrals, including the "corrected work order" Defendants submitted which they claim shows that Kazolias was in fact out of the area. (*See* Olivieri Aff., Ex. F.)[6] Nor have Defendants demonstrated there is no dispute as to the December 1-3, 2008 challenged referrals. As the Report explains, the evidence the parties provide related to these referrals is contradictory and there appears to be a genuine dispute as to whether Defendants followed established referral procedures on these dates.

For the reasons stated above, this Court finds that Defendants are entitled to summary

---

[5] "Corcoran Aff, Ex. 1" refers to a copy of Plaintiff Pete Kazolias' certification in "Electrical Safety Related Work Practices NFPA 70E," dated January 17, 2009.

[6] "Olivieri Aff." refers to the Affidavit of Rosario Olivieri in Support of Defendants' Objections to the Report and Recommendation, dated February 15, 2013. "Olivieri Aff, Ex. F" refers to, according to Defendants, "a corrected copy of the corrected work order" stating that Kazolias was "working out of town LU 479." See Olivieri Aff. ¶ 16.

judgment on the October 21, 28, November 12, December 1, and December 2, 2008 referrals. Defendants are not entitled to summary judgment on the November 13-14, 2008, December 3, 2008, November 18, 2009, and March 2, 2010 referrals.

The Report recommends Defendants' motion for summary judgment be denied on several of Swingle's LMRA breach of contract claims related to challenged job referrals on the following dates: February 29, 2008; March 10-11, 2008; March 20-31, 2008; and August 20-26, 2008. The Report states that Defendants claimed Swingle was passed over on February 29, 2008 and March 10, 2008 because at that time he lacked required certifications, specifically an Arc Flash certification and a confined space specialty. (Report at 45.) Olivieri affirms that, related to both challenged referrals, as follows: "I investigated further and found that Mr. Swingle was at the time [] certified in Arc Flash. Since I was not the referral agent at the time I can find no reason why Mr. Swingle was not referred to this job." (Olivieri Aff. ¶¶ 28, 30.) (*see also* Def. Obj. at 8-9 (stating that "at this point in time, Olivieri has been unable to locate documentation showing why Swingle was not called for those jobs by the dispatcher at the time nearly five years ago.") Accordingly, a genuine dispute exists as to the February 29 and March 10, 2008 challenged referrals.

Defendants also state that "Olivieri determined that Swingle was not referred to [another March 10, 2008 referral] because Lightmore had requested Mr. Gilmore to be general foreman." (Def. Obj. at 9.) These objections are generally vague and fail to overcome the Report's finding that Defendants are not entitled to summary judgment on these challenged referrals. Similarly, there is evidence in the record in the form of Swingle's affidavit that he was not on vacation during the time period claimed by Defendants, and evidence that he was not out of the area on another job assignment during the time period from August 20 to 26, 2008. Defendants'

objections on these challenged referrals fail to overcome the Report's finding that contradictory

evidence in the record precludes summary judgment on these claims.  Accordingly, this Court

concurs with the Report's finding that Defendants are not entitled to summary judgment on

Swingle's challenged referrals.

As for Plaintiff Roxby, the Report recommends that summary judgment be denied on

several of his breach of contract claims under the LMRA based on the challenged referrals on the

following dates:  February 29, 2008; March 11, 2008; August 4-5, 2008; and August 14, 2008.

Defendants assert that Roxby was not referred on February 29, 2008 and March 11, 2008

because he was not certified in Arc Flash Protection as required for this assignment, and

evidence they submit in objection to the Report shows that Roxby was not certified in Arc Flash

Protection at the time of these two challenge referrals.  (See Corcoran Aff. ¶ 7)("Mr. Roxby first

became certified by the School in Arc Flash . . . on April 23, 2009" and that prior to that date he

had not been certified within Local 363.)  Corcoran's affidavit attaches what appears to be a

copy of the certificate for Roxby's April 23, 2009 certification.  (Corcoran Aff., Ex. 3.)[7]

Accordingly, there is no contradictory evidence precluding summary judgment on Plaintiffs'

breach of contract claims related to these two challenged referrals.  Defendants are therefore

entitled to summary judgment on Roxby's February 29, 2008 and March 11, 2008 referrals.

The Report also found a genuine dispute as to Roxby's additional March 11, 2008

challenged referral.  Defendants' objection states that "[Olivieri] has been unable to locate

documentation explaining why the referral agent at the time did not refer Roxby to the night job

almost five years ago." (Def. Obj. at 8.)  Olivieri affirms that "ordinary journey works are not

required to work a second shift [or night job] . . . and would not have been charged with a

---

[7] Corcoran Aff, Ex. 3" refers to a copy of Plaintiff Kevin Roxby's certification in "Electrical Safety Related Work
Practices NFPA 70E," dated April 23, 2009.

refusal" if the individual chose not to work such a shift"   (Olivieri Aff. ¶ 42.)  These claims fail

to demonstrate that there is no contradictory evidence as to whether Defendants followed

referrals procedures and as such disputed issues make summary judgment improper.  The Report

also recommends that Roxby's claim related to being passed over for referrals on August 4, 5

and, 14, 2008 should not be dismissed because, contrary to Defendants' claim, there was no

evidence that Roxby was working at another job on those dates.  The Report explains that Roxby

was not sent to an assignment at Sass Electric until August 7, 2008, who did not request a

journeyman until the day prior, at which time the complained-of August 4 and 5 referrals had

already been made.  Similarly, Defendants' claim that Roxby was still working at Sass Electric at

the time of the August 14, 2008 challenged referral is not supported by the evidence, which

indicates that his position with Sass Electric ended on August 13.  Defendants' objections and

the Olivieri affidavit do not indicate that the Report was improper in finding that genuine issues

precluded summary judgment on these challenged referrals.

Accordingly, Plaintiff's LMRA claims based on Roxby's challenged referrals of August

4-5 and August 14, 2008 survive dismissal.

**F.  <u>Plaintiffs' ADEA Claims</u>**

Plaintiffs asserted claims for unlawful age discrimination and retaliation in violation of

the ADEA.

1.  <u>ADEA Discrimination Claim</u>

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise

discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  It is

unlawful for a labor organization "to exclude or to expel from its membership, or to otherwise

discriminate against, any individual because of his age" or "to fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities . . . or otherwise affect his status as an employee . . . because of such individual's age." 29 U.S.C. § 623(c)(1),(2).

Age discrimination claims under the ADEA are analyzed under the same three-step burden shifting framework set forth in *McDonnell Douglas*, in which Plaintiff must first set forth a *prima facie* case of discrimination. *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (applying *McDonnell Douglas* burden-shifting framework to ADEA claim). Under the ADEA, a plaintiff must show not only that the defendant discriminated against plaintiff on the basis of age, but that age discrimination was the "but-for" cause of the adverse action and not merely one of the motivating factors. *See Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 174 (2009); *Miller v. National Association of Securities Dealers, Inc.*, 703 F.Supp.2d 230, 244-45 (E.D.N.Y. 2010) (stating that courts in the Second Circuit continue to apply the *McDonnell Douglas* framework, as modified by *Gross*, to ADEA cases.)

The Report found that Plaintiffs failed to provide evidence that any age-based discriminatory animus motivated Defendant Union's alleged failure to comply with their duty of fair representation related to Plaintiffs' grievances against Lightmore, and therefore recommended dismissal of Plaintiffs' ADEA discrimination claim.

This Court concurs with that finding.

2. <u>ADEA Retaliation Claim</u>

The ADEA's anti-retaliation provisions make it "unlawful for an employer to discriminate against any of [its] employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such an individual . . . participated in any

manner in an investigation, proceeding, or litigation under this [Act]." 29 U.S.C. § 623(d);

*Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 241 (2d Cir. 2007). Retaliation claims

under the ADEA are analyzed under the burden-shifting framework of *McDonnell Douglas*

*Corp. v. Green,* 411 U.S. 792 (1973), in which the plaintiff bears the initial burden of

establishing a *prima facie* case of retaliation. *See Gorzynski v. Jet Blue Airways Corp.,* 596 F.3d

93, 106 (2d Cir. 2010).

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate sufficient

evidence to allow a trier of fact to find that 1) plaintiff engaged in protected activity; 2) the

employer was aware of this activity; 3) the employer took adverse action against the plaintiff;

and 4) a causal connection exists between the protected activity and the adverse action. *Kessler*

*v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006). A plaintiff

engages in protected activity if she has a "reasonable belief that [s]he was opposing an

employment practice made unlawful by . . . the ADEA." *Kessler,* 461 F.3d at 210. A causal

connection between the protected activity and the adverse action may be demonstrated by

showing "(1) direct proof of retaliatory animus directed against the plaintiff; (2) disparate

treatment of similarly situated employees; or (3) that the retaliatory action occurred close in time

to the protected activities." *See Gorman–Bakos v. Cornell Co-op Extension of Schenectady*

*Cnty.,* 252 F.3d 545, 554 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170,

1178 (2d Cir. 1996)).

Once plaintiff establishes a *prima facie* case of discrimination by a preponderance of the

evidence, the burden then shifts to the defendant to articulate "some legitimate,

nondiscriminatory reason" for its retaliatory action. *Gorzynski,* 596 F.3d at 106 (*citing*

*McDonnell Douglas,* 411 U.S. at 802). If defendant makes this showing, the presumption of

discrimination drops out and the burden shifts back to Plaintiff to show "that the defendant's proffered reason was a pretext for retaliation." *Id*; *see Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 380-81 (2d Cir. 2003).

Although the evidentiary burdens shift under this framework, the ultimate burden of persuasion that the defendant discriminated against the plaintiff remains at all times with the plaintiff. *See Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In determining whether the plaintiff has satisfied this burden, the Court must consider the evidence of discrimination in totality, and "examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer." *Byrnie v. Town of Cromwell Bd. of Educ.,* 243 F.3d 93, 102 (2d Cir. 2001).

### a. *Kazolias's ADEA Retaliation Claims*

The Report found that Plaintiffs had established a *prima facie* case of retaliation under the ADEA related to breaches of the duty of fair representation for the November 18, 2009 and March 2, 2010 referrals, that Plaintiffs had shown evidence of a retaliatory animus in the form of comments made by Maraia and other Union officials, and that genuine issues remained as to whether Defendants had legitimate, non-discriminatory reasons for those referrals. As such, the Report found that summary judgment should be denied as to these two referrals.

The Report found that Defendants had provided contradictory evidence related to several referrals between the date Kazolias filed his EEOC complaint on September 15, 2008 and February 17, 2009 that did not support Defendants' claims that those referrals were made pursuant to established referral procedures, but that summary judgment should be granted on those referrals because there was no evidence that they were motivated by any retaliatory

animus.

The Report also found that some of the actions taken by Defendants did not constitute a breach of their duty of fair representation and therefore were not adverse employment actions to establish a *prima facie* retaliation claim on several of Plaintiffs' allegations – his termination from a job with Modern Electric in April, 2008; inaction upon a grievance he filed in September, 2008; Defendants' position on Kazolias' dispute with an employer in October, 2008; a wage dispute for a February, 2009 assignment; and harassment Kazolias claims to have endured while serving as union president. The Report also found that Plaintiff Kazolias' allegations that Maraia retaliated against him after he became union president were not adverse actions because they were not breaches of the duty of fair representation and therefore could not support an ADEA retaliation claim.

Plaintiffs challenge the Report's dismissal of three of those retaliation claims – the Union allegedly failing to support him in his October, 2008 dispute with Perreca Electric, his February, 2009 wage dispute, and the harassment he allegedly suffered as president – but provide only general objections to the Report's recommendation that fail to give any specific reasons why these claims should not be dismissed.

  b.  *Swingle's ADEA Retaliation Claims*

The Report found that Plaintiff had failed to demonstrate that he suffered any adverse employment actions during the relevant time period for his ADEA retaliation claim, that is, between the date Defendants became aware of his May, 2009 EEOC Complaint and the August 25, 2010 Amended Complaint. Accordingly, the Report recommended dismissal of Plaintiff's 2008 and 2011 referrals, which occurred either prior to the EEOC complaint or after Plaintiff filed his instant Amended Complaint.

c. *Roxby's ADEA Retaliation Claims*

The Report found that Defendants were entitled to summary judgment on Plaintiff Roxby's ADEA retaliation claims. Specifically, the Report found that Roxby was unable to show he experienced an adverse employment action because he provided no evidence of a retaliatory animus that could connect his protected activity to the challenged referrals. In addition, Roxby failed to provide facts supporting an inference that Defendants failed to pursue his complaints against Filingeri Electric related to his termination in retaliation for his September 15, 2008 EEOC complaint against the Union. The Report also found that any ADEA retaliation claims against Plaintiff Maraia should be dismissed because the ADEA does not provide for liability against individuals.

This Court concurs with the Report's finding that Plaintiff Kazolias' ADEA retaliation claim related to the November 18, 2009 and March 2, 2010 referrals survive dismissal but that the remainder of Plaintiffs' ADEA claims should be dismissed.

## G. Plaintiffs' Other Claims

The Report recommends that summary judgment be granted in favor of Defendants on the remainder of Plaintiffs' claims. Specifically, the Report recommends as follows: Plaintiff's age discrimination claim under New York State law be dismissed because those claims are preempted by the LMRA; Plaintiff's Title VII claim be dismissed because Plaintiffs have not alleged, and the evidence does not support, that they experienced discrimination on the basis of any of the characteristics protected by Title VII: race, color, religion, gender, or national origin; Plaintiffs' Equal Pay Act claim be dismissed because Plaintiffs have provided no evidence supporting such a claim; Plaintiffs' ADA claim be dismissed because Plaintiffs have stated no facts or provided no evidence which could entitle them to relief under the ADA for either

unlawful discrimination or retaliation; Plaintiffs' claim under the Occupational Safety and Health Act be dismissed because that act does not create a private right of action; Plaintiff's whistleblower claim under New York law be dismissed because Plaintiffs abandoned this claim and because it is without merit; Plaintiffs' claims for alleged violation of the National Electric Code and other Building Code Violations be dismissed because the parties have already stipulated to dismissal of all claims against Lightmore; Plaintiffs' claim for Defendants' alleged breach of the implied duty of good faith and fair dealing be dismissed because Plaintiffs have abandoned it and it is preempted by the LMRA; and Plaintiffs' intentional infliction of emotional distress be dismissed because it is preempted by federal labor law and in any event unsupported.

This Court concurs with the Report's conclusions with regard to these claims and accordingly adopts them as the Order of this Court.

## CONCLUSION

For the reasons set forth above, this Court concurs with the Report and Recommendation and hereby adopts it as the Order of this Court, subject to the exceptions discussed above.

Accordingly, Defendants' motion for summary judgment is GRANTED in part and DENIED in part, as follows:

Defendants' motion for summary judgment is denied as to the following claims:

> Plaintiff Kazolias' duty of fair representation claims related to the challenged job referrals of November 18, 2009 and March 2, 2010 as against Defendant Union;

> Plaintiff Kazolias' LMRA breach of contract claims related to the challenged job referrals of November 13-14, 2008, December 3, 2008, November 18, 2009, and March 2, 2010 as against Defendant Union and to the extent Plaintiff seeks equitable relief, as against Defendant Maraia;

> Plaintiff Swingle's LMRA breach of contract claims related to the challenge job referrals of February 29, 2008; March 10-11, 2008; March 20-31, 2008; and August 20-26, 2008, as against Defendant Union and to the extent Plaintiff seeks equitable relief, as against Defendant Maraia;

> Plaintiff Roxby's LMRA breach of contract claims related to the challenged job referrals of August 4-5, 2008 and August 14, 2008 as against Defendant Union and to the extent Plaintiff seeks equitable relief, as against Defendant Maraia;

> Plaintiff Kazolias' ADEA retaliation claim related to the challenged job referrals of November 18, 2009 and March 2, 2010 as against Defendant Union.

Defendants' motion for summary judgment is granted as to the remainder of Plaintiffs' claims.

Plaintiffs' motion to file a second amended complaint is DENIED.

Plaintiffs' motion to re-open discovery is DENIED.

SO ORDERED.

Dated:      New York, New York
            June 26, 2013

RICHARD OWEN, U.S.D.J.